## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER NEAL, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   14-cv-1185-SCW |
| | ) |
| TIMOTHY VEATH, | ) |
| JASON N. HART, | ) |
| and REBECCA COWEN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Acting *pro se*, incarcerated inmate Christopher Neal filed the present lawsuit pursuant to 42 U.S.C. § 1983.   Plaintiff, who is incarcerated at Menard Correctional Center ("Menard"), alleges that the Menard officials named as defendants violated his First and Fourteenth Amendment rights when he was sentenced to six months of disciplinary segregation after a fight in the Menard lunchroom.   He alleges that, unbeknownst to him until after the sentence, an additional offense was added to his disciplinary ticket.    This matter is now before the Court on the Defendants' Motion for Summary Judgment (Doc. 34).   For the reasons articulated below, Defendants' Motion for Summary Judgment (Doc. 34) is **DENIED**.

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment

motions.   The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.   *Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a)).   The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   *Accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.   *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor."   *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

### FACTUAL AND PROCEDURAL BACKGROUND

The events leading to this lawsuit began in June 2009.   From May 23 to June 19 of

that year Plaintiff was in segregation due to an investigation relating to the healthcare unit at Menard.   (Doc. 35-1, p. 6).   After being released from segregation, Plaintiff made his way to the healthcare unit where he was an inmate worker.   (*Id.*).   Before he could arrive there, however, he was stopped by Defendant Timothy Veath, who was a lieutenant and supervisor of the Menard healthcare unit.   (*Id.* at 4, 6).   Veath would not allow Plaintiff to return to work in the healthcare unit, and told Plaintiff that he was responsible for sending Plaintiff to segregation.   (*Id.* at 7; Doc. 41, p. 4).   Veath then sent Plaintiff to the North 1 shower, and a few days later Plaintiff was transferred to Stateville Correctional Center ("Stateville").   (Doc. 35-1, p. 7).   After his encounter with Defendant Veath, and prior to the transfer to Stateville, Plaintiff filed two grievances: one for Veath's actions in preventing him from returning to work, and the other for the investigation that placed Plaintiff in segregation in the first place.   (*Id.*).   Plaintiff filed the grievance in the ordinary course by placing the grievances in the grievance box on his way to chow.   (*Id.* at 8).   He was sent to Stateville only a few days later, and he never received responses or heard anything more regarding the two grievances.   (*Id.*).

Plaintiff returned to Menard in January of 2013.   (*Id.*).   On October 17, 2013, Plaintiff had an altercation with another inmate in the chow hall that resulted in a warning shot being fired by a guard.   (*Id.* at 10).   As a result of the fight, Plaintiff was issued a disciplinary ticket.   (*Id.*).   The ticket given to Plaintiff was prepared by a C/O Anthony and charged Plaintiff with "301-Fighting".   (*Id.* at 9, 22).   On October 23, 2013, Plaintiff was brought before the Menard adjustment committee for a hearing on his

charges.  (*Id.* at 11).   Present at the hearing were Lt. Veath, Jason Hart, and Rebecca Cowan.   (*Id.*)   While Plaintiff "assumed" that all three of these individuals were on the adjustment committee, the committee's Final Summary Report indicates that only Veath and Hart were members.   (*Id.* at 12, 24).

When Plaintiff entered the room where the committee had convened, Lt. Veath said, "Mr. Neal, you're back with us, huh?   What are you here for?"   (*Id.* at 12).

Defendant Cowan then indicated that she was looking for his ticket, upon which Veath, presumably after looking at the ticket, asked, "Oh, you had a fight?"   (*Id.*).

Plaintiff then said, "Veath, you ain't even got to go through that, man.   I plead guilty, man."   (*Id.*).   He continued, "It's nothing, man.   You ain't got to read off of nothing."   (*Id.*).   Plaintiff made this statement because, from the ticket he had been given, he already knew with what he had been charged, and because "Veath was not trying to hear anything."   (*Id*; Doc. 41, p. 1).   Additionally, according to Plaintiff, Defendant Cowan stated, "All he's got is a fighting ticket."   (Doc. 35-1, p. 12).

Defendant Veath then told Plaintiff to stop fighting in the chow hall, and Plaintiff apologized and left.   (*Id.*).   At no point during the hearing did anyone read the ticket to Plaintiff.   (*Id.*).   The encounter at the Adjustment Committee hearing was the first time that Plaintiff had seen or interacted with Defendant Veath since Plaintiff's return to Menard.   (*Id.* at 8).

Plaintiff was placed in segregation, but was not told the specific results of the hearing.   (*Id.* at 13).   He assumed that he would be in segregation for thirty days, but

later, after asking an officer to check what day he was to be released, he found out that he had been sentenced to six months in segregation.   (*Id.*).   While the ticket that was provided to Plaintiff before the adjustment committee hearing indicates that he was charged with only "301-Fighting", the summary report from the committee indicates that Plaintiff was charged with and pled guilty to "Fighting" *and* "Dangerous Disturbances."   (*Id.* at 24).   The discipline recommended by the committee, and later finalized, was a demotion to C Grade, placement in segregation, and a commissary restriction, all for six months.   (*Id.*).   The "Nature of Offense" is given as the basis for the discipline.   (*Id.*).

Unlike the ticket given to Plaintiff, another ticket, which appears to have been used by the adjustment committee, contains a charge for "105-Dangerous Disturbance." (*Id.*).   While the charge for "Fighting" on this ticket is type-written, the "Dangerous Disturbance" charge appears to be hand-written.   (*Id.*).   Plaintiff did not know about the Dangerous Disturbance charge prior to finding out about the six month segregation sentence.   (*Id.* at 13).   He filed grievances relating to the additional charge and his sentence, and the Dangerous Disturbance charge was eventually expunged by the IDOC's Administrative Review Board ("ARB").   (*Id.* at 25).   The ARB reduced Plaintiff's sentence to one month C Grade, segregation, and commissary restriction. (*Id*).   By the time the ARB issued its ruling, however, Plaintiff had already served his six months in segregation.   (*Id.* at 14).

During his deposition, other than stating that segregation is more restrictive, in

that, for instance, an inmate cannot visit commissary or have telephone privileges or contact visits while in segregation, Plaintiff gave little description regarding the conditions of his segregation.   (*Id.* at 17).   In response to Defendants' motion for summary judgment, however, Plaintiff states that during his time in segregation, he was placed in a strip cell for suicide watch (a status for which he was not recommended) that was covered in feces and urine and had a non-working toilet.   (Doc. 41, p. 2).

Plaintiff filed suit in this Court pursuant to 42 U.S.C. § 1983, and in in his merits review order pursuant to 28 U.S.C. §1915A, Judge Gilbert found that Plaintiff had successfully pleaded the following two counts:

> **Count 1: Defendants Veath, Hart, and Cowan violated Plaintiff's right to due process of law in connection with the 105-Dangerous Disturbance charge and in violation of the Fourteenth Amendment;**

> **Count 3: Defendants Veath, Hart, and Cowan retaliated against Plaintiff for filing grievances in violation of the First Amendment.**

(Doc. 8).   Defendants now seek summary judgment on those claims.

## DUE PROCESS CLAIM

In order for a prisoner to recover on a claim challenging the process afforded in a prison disciplinary proceeding, the facts must demonstrate (1) constitutionally deficient procedural due process as to the proceeding, and (2) a resulting deprivation of a liberty or property interest caused by the defendants.   *Scruggs v. Jordan*, **485 F.3d 934, 939 (7th Cir. 2007)**.   As to the second factor, Placement in disciplinary segregation implicates a liberty interest when the conditions of segregation impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin v.*

*Connor*, **515 U.S. 472, 485 (1995)**.   In determining whether a liberty interest is implicated, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured."   ***Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) ("*Marion I*")) (emphasis in original) (internal quotations omitted)**.

Viewing the record in the light most favorable to Plaintiff, a reasonable juror could find that the conditions of Plaintiff's segregation imposed upon Plaintiff an atypical and significant hardship in relation to the ordinary incidents of prison life. Though it is only briefly mentioned in his *pro se* response, Plaintiff's claim that the walls of his cell in segregation were covered in feces and urine is enough for the implication of a liberty interest.   Though Plaintiff does not indicate if he was in the cell covered in feces and urine for his entire stay in segregation, in viewing the facts most favorably to Plaintiff, one can infer that he was in that dirty cell for the duration of his segregation. A six month stay in a cell with the walls covered in feces and urine and a non-working toilet constitutes an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life.   Though Plaintiff mentioned these conditions only in his Response to the summary judgment motion, the statement in his Response is sufficient to create a question of fact as to the condition of his segregation cell.

Since a reasonable juror could find that Plaintiff suffered a deprivation of a liberty interest, the Court must examine the issue of whether the process that resulted with Plaintiff ending up in segregation was constitutional.   Procedural due process in the

prison context requires (1) advanced written notice of the charge against an inmate; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed.  *Wolff v. McDonnell***, 418 U.S. 539, 563-69 (1974)**. In addition, the disciplinary decision must be supported by "some evidence."  *Black v. Lane***, 22 F.3d 1395, 1402 (7th Cir. 1994)**.   A mere meager amount of supporting evidence is sufficient to satisfy this due process inquiry.  *Scruggs***, 485 F.3d at 941**.  The "some evidence" standard falls below the preponderance of the evidence standard, and only requires a decision not to be arbitrary or without support in the record.  *McPherson v. McBride***, 188 F.3d 784, 786 (7th Cir. 1999)**.   A disciplinary decision must have "some factual basis."  *Id.*   In addition, the evidence relied in reaching the disciplinary decision must "bear some indicia of reliability".  *Scruggs***, 485 F.3d at 941**.  While a court reviewing a prison disciplinary proceeding will not consider exculpatory evidence solely because it could have supported a result different from the one reached by the board, it must satisfy itself that the evidence the board relied on bears the "sufficient indicia of reliability".  *Meeks v. McBride***, 81 F.3d 717, 721 (7th Cir. 1996) (quoting** *Viens v. Daniels***, 871 F.2d 1328, 1335 (7th Cir. 1989)) (internal quotations omitted)**.

A reasonable juror could find that Plaintiff was not afforded proper procedural due process.   A jury could find that Plaintiff was not given advanced written notice of the Dangerous Disturbance charge.   The facts reasonably viewed in Plaintiff's favor indicate that when Plaintiff pleaded guilty at the Adjustment Committee hearing, he

reasonably believed he was only pleading guilty to the fighting charge since the disciplinary ticket Plaintiff received prior to the hearing only contained a charge for fighting.   Further, at the hearing, Defendant Cowan stated that the only charge against Plaintiff was for fighting, and there is no evidence indicating that Plaintiff was shown a copy of his ticket or otherwise informed of the Dangerous Disturbance charge at any time during the hearing.   As such, the facts viewed in Plaintiff's favor indicate that Plaintiff was not informed of the Dangerous Disturbance charge prior to the disciplinary hearing.   Though Plaintiff essentially entered a guilty plea before the committee presented the evidence against him, Plaintiff did so in reliance on the earlier disciplinary ticket containing only the fighting charge.   Given Defendant Cowan's statement in particular, a reasonable inference can be drawn that the Dangerous Disturbance charge was arbitrarily added after Plaintiff plead guilty, and Due Process protections are in place to prevent arbitrary state action.   *See Goss v. Lopez*, **419 U.S. 565, 574 (1975) ("The Due Process Clause also forbids arbitrary deprivations of liberty.")**   Further, since all Defendants were a part of the Adjustment Committee's proceedings, a jury could reasonably find that any or all of them participated in, condoned, or facilitated a violation of Plaintiff's Due Process rights.     Additionally, as the Supreme Court has expressly indicated that an inmate must be given advanced notice of a disciplinary charge prior to a hearing, the Defendants are not entitled to qualified immunity.   *See Wolff, supra*.   Given the Court's analysis, summary judgment is not appropriate as to Plaintiff's Due Process claim.

### First Amendment Retaliation

An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment. *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000)**. Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble*, **226 F.3d 568, 573 (7th Cir. 2000)**. In a First Amendment case, the burden of proof is split between the parties. *Mays v. Springborn*, **719 F.3d 631, 634 (7th Cir. 2013)** (**citing** *Mt. Healthy Board of Education v. Doyle*, **429 U.S. 274 (1977)**). First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* **at 635.** The burden then shifts to defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Id.* The inquiry is a question of fact. *Ustrak v. Fairman*, **781 F.2d 573, 578 (7th Cir. 1986).** Evidence that shows that a prisoner did not violate the regulation can show retaliation. *Hale v. Scott*, **371 F.3d 917, 920 (7th Cir. 2004)**.

The Court finds there is sufficient evidence for Plaintiff to recover on his retaliation claim. The fact that Defendant Veath's first contact with Plaintiff after Plaintiff's return to Menard in 2013 was at the Adjustment Committee hearing wherein Plaintiff unknowingly received the Dangerous Disturbance charge, combined with Veath's comments about Plaintiff being back at Menard, leads to a reasonable inference that Defendant Veath added the charge after Plaintiff's guilty plea in retaliation for

Plaintiff filing grievances against Veath. The jury could also infer that Defendants Cowan, and Hart participated in, facilitated, or condoned the retaliatory conduct.

Defendants fall short in their argument that the alleged act of retaliation was too far separated in time from the protected speech to allow Plaintiff to recover as a matter of law. Defendants rely on the Seventh Circuit's decision in *Kidwell v. Eisenhauer*, **679 F.3d 957 (7th Cir. 2012)** in making this argument; however, *Kidwell* is distinguishable from the case at-bar. *Kidwell* involved a suit brought by a police officer for retaliation in the employment context. There, Mr. Kidwell was the subject of an adverse employment action over a year after he participated in protected speech at a union meeting. *Kidwell*, **679 F.3d at 961, 963.** The court held that the extended gap in time between the protected speech and the adverse employment action "militate[d] against" the allowance of an inference of causation between the two. *Id.* **at 967.** Moreover, the court found that there were several superseding events, including Mr. Kidwell's negative behavior, subsequent to the protected speech that caused the adverse employment action. *Id.* **at 969**.

In the case at-bar, though there was a large gap of time between Plaintiff's protected speech and the Adjustment Committee hearing, an inference of retaliation may still be reasonably drawn. The Plaintiff in *Kidwell* was constantly under the authority of those who took the adverse employment action against him, and therefore the fact that there was more than a year between Kidwell's protected speech and the adverse action suggests that something other than the speech was the cause of the

adverse action.   Here, however, Plaintiff was not constantly in contact with Defendant Veath, as Plaintiff was transferred from Menard for a long period of time.   What the Court finds important in the context of Plaintiff's suit is the question of what *opportunities* Defendant Veath had to take adverse actions against Plaintiff following the protected speech compared to when he actually took the adverse action.   Plaintiff's undisputed testimony is that Plaintiff did not see or interact with Defendant Veath upon his return to Menard until the Adjustment Committee hearing.   Therefore, the facts viewed in Plaintiff's favor allow for the inference that Veath took the adverse action of secretly adding the Dangerous Disturbance charge to Plaintiff's ticket at the first opportunity he had to adversely impact Plaintiff after Plaintiff filed grievances against him.   As such, since the adverse action took place at the first opportunity after Plaintiff's protected speech, the length of time between the two does not preclude Plaintiff's retaliation claim as a matter of law.

Given the above analysis, a jury could reasonably infer that Defendant Veath, along with the participation, facilitation, or condoning of the other defendants, secretly added and convicted Plaintiff for a charge of Dangerous Disturbance in retaliation for grievance filed by Plaintiff against Veath.   At this point, the burden shifts to the Defendants to demonstrate that Plaintiff would have received the same charge with or without the retaliatory motive.   That question, however, is a question of fact and must be decided by a jury.   Additionally, the Defendants' argument that they are entitled to qualified immunity is essentially based on an assertion that there is a lack of evidence of

retaliatory motive by the Defendants.    As already indicated, the Court finds otherwise.

Summary judgment is not appropriate as to Plaintiff's retaliation claims.

CONCLUSION

For the reasons stated above, a reasonable trier of fact could find for Plaintiff on

both his Due Process and First Amendment retaliation claims.    Therefore, Defendants'

Motion for Summary Judgment (Doc. 34) is **DENIED**.    This matter will be set for a Final

Pretrial Conference by a separate order.

**IT IS SO ORDERED**.
DATED: 3/27/2017

_/s/ Stephen C. Williams_
STEPHEN C. WILLIAMS
**United States Magistrate Judge**